IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


Tonya E. Freeman                                                                                          PLAINTIFF

        v.                                    Civil No. 10-2094

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

      Plaintiff, Tonya E. Freeman, appeals from the decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(I) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act"). 42 U.S.C. §405(g).

      Plaintiff protectively filed her DIB and SSI applications on December 8, 2005, alleging a disability onset date of September 30, 2004. T. 14. Allegations included heel spurs, hip and leg pain, scoliosis and high blood pressure. T. 184. At the time of the onset date, Plaintiff was 41 years old and possessed an eighth grade education. T. 22, 67. She had past relevant work as a cafe/restaurant worker. T. 63.

Plaintiff's applications were denied at the initial and reconsideration levels. T. 33, 37, 42. At Plaintiff's request, an administrative hearing was held in Fort Smith, Arkansas, on November 2, 2007. T. 255-274. Plaintiff was present at this hearing and represented by counsel. Vocational Expert Jim Spraggins also testified. Administrative Law Judge ("ALJ") David T. Hubbard issued a decision on November 30, 2007, finding that Plaintiff was not disabled within the meaning of the Act. T. 14. On June 11, 2010, the Appeals Council found no basis to reverse the ALJ's decision. T.4. Therefore, the ALJ's November 30, 2007, decision became the Commissioner's final administrative decision.

## II.     Medical History

The evidence showed and the ALJ determined that Plaintiff had the following severe impairments: mood disorder, back disorder, obesity and bilateral calcaneal tendinitis (heel spurs). T. 16.

Mood Disorder

In March, 2006, Plaintiff told Dr. Vanderburg that she was depressed but she declined to start on antidepressant medication. T. 212. Plaintiff participated in two consultative mental exams: Patricia J. Walz, Ph.D (August 9, 2006) and Robert L. Spray, Jr., Ph.D (June 14, 2007). D. Walz diagnosed Plaintiff with Dysthymia vs. major depression, recurrent moderate without psychosis and Dr. Spry with major depression, recurrent, severe without psychosis[1]. T. 178, 220.

---

[1] The Essential feature of Dysthymic disorder is a chronically depressed mood that occurs for most of the day more days than not for at least two years. Individuals with Dysthymic disorder describe their mood as "sad" or "down in the dumps. *Diagnostic and statistical manual of mental disorders* 300.4 (American Psychiatric Association, ed., 4th ed. 2000). Dysthymic disorder and Major Depressive Disorder are differentiated based on severity, chronicity, and persistence. In Major Depressive Disorder, the depressed mood must be present for most of the day, nearly every day, for a period of at least two weeks. *Id*. At 374.

At the time of the hearing and according to medical records submitted after the hearing, Plaintiff was taking Fluoxetine for depression as prescribed by James Saunders, P.A. T. 262, 248-254.

Back Disorder

Plaintiff sought treatment at Sparks Regional Medical Center emergency room for lower back pain twice in 2005. T. 139, 164. Both times images of the lumbar spine showed mild levoscoliosis[2] with no spondylosis[3].

Obesity

Plaintiff is 5'7" and morbidly obese[4]. Her recorded weight is as follows:

| Date | Weight | Reference |
|---|---|---|
| February 16, 1993: | 268 lbs | T. 125 |
| March 1, 1993: | 273.5 lbs | T. 153 |
| December 8, 1995: | 279 lbs | T. 124 |
| April 3, 1996: | 289 lbs | T. 123 |
| October 3, 1997: | 295 lbs | T. 121 |

---

[2] Levoscoliosis is a slight left curvature of the spine. http://www.levoscoliosis.org/ (Last visited June 28, 2011).

[3] Spondylosis is arthritis that affects the spine. http://www.spineuniverse.com/conditions/spondylosis/what-spondylosis (last visited June 23, 2011).

[4] Anyone who is more than 100 pounds overweight or who has a Body Mass Index greater than or equal to 40 kg/m$^2$ is considered morbidly obese. http://www.nlm.nih.gov/medlineplus/ency/article/007297.htm (Last visited June 24, 2011).

| Date | Weight | Ref |
|---|---|---|
| January 22, 1998: | 293 lbs | T. 119 |
| March 2, 1998: | 289 lbs | T. 117 |
| October 27, 1998 | 293 lbs | T. 116 |
| June 22, 1999: | 320 lbs | T. 115 |
| July 23, 1999: | 318 lbs | T. 114 |
| June 7, 2000 | 308 lbs | T. 113 |
| January 23, 2001 | 314 lbs | T. 112 |
| February 2, 2001 | 312 lbs | T. 111 |
| April 18, 2002: | 332 lbs | T. 110 |
| January 21, 2005: | 290 lbs | T. 154 |
| February 8, 2005: | 296 lbs | T. 153 |
| February 24, 2005: | 288 lbs | T. 152 |
| January 26, 2006: | 326 lbs | T. 213 |
| March 9, 2006: | 325 lbs | T. 209 |
| November 2, 2007: | 335 lbs | T. 263 |

Tendinitis

Plaintiff was first diagnosed with heel spurs[5] in February, 1993 by Dr. Dodson, podiatrist,

---

[5] A common cause of heel pain is the heel spur, a bony growth on the underside of the heel bone. The spur, visible by X-ray, appears as a protrusion that can extend forward as much as half an inch. When there is no indication of bone enlargement, the condition is sometimes referred to as "heel spur syndrome." Heel spurs result from strain on the muscles and ligaments of the foot, by stretching of the long band of tissue that connects the heel

and Dr. Travis confirmed the diagnosis by x-ray. T. 125. Dr. Travis was not able to say whether her condition was due to a work-related injury or her weight. *Id.* She was seen again by Dr. Travis the following month, treated with medication for her pain and presumably received relief, as her next complaint was not until April 2002. T. 125, 110. At that time Dr. Baker counseled Plaintiff about her weight and prescribed pain medication. T. 110. In January 2005, Plaintiff was seen by Dr. Vanderberg, who noted that her heel spurs did not appear to be horribly traumatic, just rather painful for her. T. 155. In March of 2005 he described her foot pain as secondary to morbid obesity. T. 212. Plaintiff sought treatment at Cooper Clinic's Foot Health Center in October 2005. T. 235-236. There, Plaintiff was dispensed medication , instructed in foot wear and stretching exercises and counseled about the potential for surgical intervention. *Id.* Plaintiff did not return for her scheduled followup appointment with Dr. Magrini. T. 236. In March 2006, Plaintiff again saw Dr. Vanderburg, who cited morbid obesity as the cause of her foot pain and noted that there was nothing that could be done for her until she lost some weight. T. 209. In August of 2007, Physician Assistant Saunders prescribed pain medication for Plaintiff's foot pain and advised her to lose weight.

At the hearing, the Plaintiff testified that she has had trouble with her feet for the last 15

---

and the ball of the foot, and by repeated tearing away of the lining or membrane that covers the heel bone. These conditions may result from biomechanical imbalance, running or jogging, improperly fitted or excessively worn shoes, or obesity. American Podiatric Medical Association, Heel Pain, http://www.apma.org/MainMenu/Foot-Health/Foot-Health-Brochures-category/Learn-About-Your-Feet/Heel-Pain.aspx (last visited June 22, 2011).

years, beginning with pain on the backs of her heels that goes up the backs of her legs.  T. 264. Standing makes her pain worse and she soaks her feet in hot water and elevates her feet for relief of pain and swelling.  *Id.*  She keeps her feet elevated about half of the day and does very little activity around the house. T. 265.  On a scale of 1 - 10 her pain level is 9.  T. 266.  Her blood pressure is under control and as a side effect of her water pills for high blood pressure she goes to the bathroom every 20 minutes at home.  T. 268.

### III.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a  medically determinable

physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    Discussion**

The ALJ determined that the claimant met the insured status requirements through December 31, 2007, that she had not engaged in substantial gainful activity since September 30, 2004, and that she had severe impairments of mood disorder, back disorder, obesity and bilateral calcaneal tendonitis. T. 16.  The ALJ found, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix . The ALJ found that Plaintiff's allegations regarding her limitations were not fully credible, and that the Plaintiff retained the residual functional capacity to perform sedentary work. T.17.

Plaintiff filed this claim contending that the ALJ: (1) erred as to RFC; (2) erred as to credibility; and (3) failed to properly evaluate obesity.  *See* Pl.'s Br. 8, 12, 16.

**Plaintiff's RFC**

The ALJ found that the Plaintiff had the residual functional capacity to perform sedentary work.  T.17.  Specifically, he found that she was able to lift a maximum of 10 pounds and sit for a total of 6 hours and stand and/or walk for a total of 2 hours each in an 8-hour workday with normal breaks. From a mental standpoint, she was able to perform routine work with superficial contact incidental to work with public and co-workers.  Such work has non-complex simple instructions which are learned by rote with few variables and requires little judgment and supervision is concrete, direct, and specific.  *Id.*

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). The plaintiff accurately describes the situation when she asserts that, "Simply put, there is just not anything in the file as to her physical limitations."  Pl.'s Br. 11.  Nowhere in the 127 pages of medical records submitted to the ALJ by the Plaintiff does any treating physician place any

8

limitations on Plaintiff's activities. Even the cane she uses to walk was not prescribed by any of the doctors she saw over the years. T. 58. The court recognizes that a treating doctor's silence on the claimant's work capacity does not in itself constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so. *Johnson v. Astrue*, 628 F.3d 991, 991 (8th Cir. 2011); *Pates-Fire v. Astrue,* 564 F.3e 935, 943 (8th Cir. 2009). The court takes note of the fact that Plaintiff's December 21, 2005, Function Report and testimony at her 2007 hearing indicated that she currently spends about an hour and a half a day on her feet performing household chores, including housekeeping, shopping, cooking and caring for her granddaughter. T. 53, 73, 74, 75, 265. She described her ability to lift 40 pounds and later 10-15 pounds, but no physician ever placed her under a lifting restriction. T. 57, 77. This is consistent with the residual functional capacity assigned by the ALJ. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (The ALJ's finding that plaintiff was limited to sedentary work is itself a significant limitation, and reveals that the ALJ did give some credit to the opinion evidence).

Medical records provided by the Plaintiff show that she sought treatment for foot and/or back pain from six physicians and one physicians assistant since 1993[6]. Not one of these providers placed restrictions on Plaintiff's activities. It is clear to this court that the volume and thoroughness of the medical records provided constitute a full and complete record from which the ALJ made his determination of RFC. The ALJ did not err in failing to order a consultative

---

[6]Robert Baker, D.O.-Van Buren Family Medical Center ;A.L. Travis, M.D.; Marshall J. Newcity, M.D. –Sparks ER; Robert Fraser, M.D.–Sparks ER; E. Jason Venderburg, M.D. –UAMS; Kent Magrini, DPM–Cooper Clinic; James Saunders, P.A.–Northside Clinic

9

exam.  While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006). The ALJ is not required to act as Plaintiff's counsel.  *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994)(ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record; *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair and prejudicial").

With respect to mental impairments, The ALJ found that Plaintiff's August 9, 2006, mental status examination by Dr. Patricia Walz did not result in any limitations with respect to concentration, persistence or pace.  T. 19.   In his June 14, 2007, mental consultative exam, Dr. Robert L. Spray, Jr. noted that Plaintiff's slow pace and long reaction times suggest that she would have difficulty working in a job setting where she was required to complete tasks in a timely manner.  T. 221. Dr. Walz's report constitutes substantial evidence for the ALJ to have determined that Plaintiff's mental impairment resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  T. 21. *See Travis v. Astrue*, 477 F.3d 1037, 1041-42 (8th Cir. 2007) (stating "[i]t is the ALJ's duty to resolve conflicts in the evidence," and we do "not reverse merely because evidence also points to an alternate outcome").

The ALJ considered Plaintiff's obesity, and explained that her "medical records certainly bear out the fact that the claimant's obesity limits her physical activity and is a contributing

10

factor to her medical condition." T. 21. The phrase used by the ALJ comes directly from *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011), which found that the ALJ adequately considered the claimant's obesity. The ALJ adopted the opinions of Dr. Travis, Dr. Baker and Dr. Vanderburg who were aware of the claimant's obesity. *See Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (deciding, when an ALJ adopts the opinion of a doctor aware of an obesity claim, the ALJ's failure to consider the claim explicitly is harmless error). The ALJ adequately considered Plaintiff's obesity. Here, the ALJ considered the impact of Plaintiff's obesity on her musculoskeletal system by limiting her to the lowest exertional level of sedentary work. This ability is borne out by Plaintiff's Function Report, her testimony and the medical records, none of which indicate that Plaintiff is disabled or has limitations greater than those determined in the ALJ's decision.

**Credibility**

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, to determine their limiting effects on a claimant. See, also 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms. SSR 96-7p. Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must assess the credibility of any statements made by the claimant to support the alleged disabling effects. The Ruling sets forth the factors

that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record. *Id.*

As part of the determination of RFC, after reviewing the medical records, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. T. 20. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1332 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* The issue is not whether Plaintiff suffers from any pain, but whether her pain is so disabling as to prevent the performance of any type of work. *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). In *Polaski,* the Eighth Circuit set forth the following pain standard:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. 739 F.2d at 1322.

Questions of credibility are the province of the ALJ as trier of fact in the first instance. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995). The ALJ need not discuss every *Polaski* factor if he discredits Plaintiff's credibility and gives good reason for doing so. If the ALJ gives good reasons for finding Plaintiff not credible, then the court should defer to his judgment when every factor is not explicitly discussed. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Here, the ALJ examined the Plaintiff's complaints and testimony in light of the objective medical evidence and the seven factors set out in 20 CFR 404.1529 (c) and noted at least seven discrete reasons he found her not to be entirely credible:

(1) Plaintiff has received medical treatment and been prescribed medications which have been relatively effective in controlling her symptoms as along as she has remained compliant. T. 20. The ALJ noted that the Plaintiff takes medicine for depression and that her high blood pressure is under control. *Id.* Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *see also Odle v. Heckler*, 707 F2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimants were responsive to medication.) *Warre v. Commissioner of Social Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006).

13

(2) Plaintiff used a cane to walk but one was never prescribed for her by any physician. T. 20.

(3) Dr. Magrini counseled Plaintiff on appropriate shoe wear, prescribed the anti-inflammatory medication Celebrex, suggested a significant stretching program, aggressive physical therapy, night splints and possible surgical intervention.  There was no evidence that Plaintiff followed through with the doctor's recommendation and she did not keep her scheduled followup appointment.  T. 21.  In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions.  *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (failure to stop smoking, drinking alcohol, and adhere to diet); *Riggins v. Apfel*, 177 F.3d 689, 693) (failure to take prescription pain medications); *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir. 1996) (failure to seek significant medical treatment); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (failure to curb smoking); *Choate v. Barnhart*, 457  F.3d 865, 872 (8th Cir. 2006) (failure to show up for tests and examinations and take prescribed medications).

(4) Plaintiff acknowledged working with her impairment during her 25 + years as a cook, which implied that she could currently perform work activities.  T. 21.

(5) The medical records revealed that Plaintiff was repeatedly advised to lose weight for persistent foot problems, but that she never complied with that medical advice.  T. 21.  Plaintiff correctly states that failure to follow medical treatment due to lack of funds is not noncompliance. Pl.'s Br. at 13.  It is for the ALJ in the first instance to determine appellant's motivation for failing to follow prescribed treatment or seek medical attention. *Benskin v. Bowen,* 830 F.2d at 884 n. 1 (8th Cir. 1987). Here, Plaintiff was repeatedly warned by her doctors to lose

weight in order to receive relief from foot pain.  Generally, if a claimant does not follow a prescribed treatment plan without a good reason, he or she will not be found disabled. 20 C.F.R. § 416.930(b) (1984).  While the record indicates that Plaintiff was released from Dr. Baker's clinic for inability to pay, it also notes that she was subsequently seen at AHEC on a grant.  T. 155.  See *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

    (6) Plaintiff reported no difficulty with self care and that she spent most of her day watching her four year old granddaughter.  She reported being able to drive on familiar routes and shop independently.  She is able to help with household tasks.  T. 21.

    (7) No physician placed any functional restrictions on her activities that would preclude sedentary work with the previously mentioned restrictions.  T. 22.

    Plaintiff contends that the ALJ simply stated there were inconsistencies and discounted Plaintiff's complaints.  Pl.'s Br. 15.  This is clearly not the case, given the seven examples of inconsistencies which the ALJ set out in his opinion and which are repeated above.

    The ALJ may discount the claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence. *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (noting the mere fact that working may cause pain or discomfort does not require a finding of disability.)  See *Haley v. Massanai*, 258 F.3d

742, 748 (8th Cir. 2001) (holding that inconsistencies between subjective complaints of pain and daily living patterns diminish credibility.)  Because the ALJ's credibility determination was supported by good reasons and substantial evidence, it is entitled to deference.  See *Cox. v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

**Capabilities and Employment Opportunities**

Plaintiff complains of the inadequacy of the hypothetical question put to the Vocational Expert in her discussion of the RFC, but the Court chooses to address the issue separately here. Pl.'s Br. 8.  The court finds substantial evidence to support the ALJ's conclusions at steps one through four of the five-step analysis, but departs from the ALJ's analysis at step five.

If, as he did here, the ALJ determines the social security disability claimant cannot resume her prior occupation, the burden shifts to the Social Security Commissioner at step five to show the claimant is capable of performing other work.  *Pates-Fires v. Astrue*, 564 F.3d 935,. 942 (8th Cir. 2009)(internal citations omitted).

Jim Spraggins, senior vocational rehabilitation counselor for Arkansas Rehabilitation Services, testified at Plaintiff's hearing.  T. 270-273.  After introducing himself and identifying Plaintiff's past work rating,[7] Mr. Spraggins testified as follows:

> **ALJ:** If you would list for me some unskilled, light jobs.
>
> **VE:** Unskilled, light jobs, fast food worker.  Arkansas has approximately 12,000.  This area is considered west Arkansas by the employment office and I have approximately 2200, United States has approximately 600,000. The individual could be a production line assemblier (sic).  Arkansas has approximately 11,000, western Arkansas has approximately 1700.  The United States has approximately 583,000.  The person could work in

---

[7] Cafe/restaurant cook--DOT rating medium; SVP 5: skilled.  "None of these skills would transfer outside of the cooking, food service area."  T. 271.

>poultry production as an eviscerater or a deboner. Arkansas has approximately 15,000. This area has approximately 1700. The United States has approximately 100,000.
>
>**ALJ:** List for me some light jobs–I mean sedentary jobs.
>
>**VE:** Sedentary, the individual could be a small production machine operator. Arkansas has approximately 4000. Western Arkansas has approximately 500. The United States has approximately 500,000. The person could be a small product assemblier (sic). Arkansas has approximately 3500, western Arkansas approximately 450, United States approximately 140,000. The person could be a food order clerk. Arkansas has approximately 2000. Western Arkansas has approximately 400. The United States has approximately 250,000. T. 271-272.

The ALJ found that Plaintiff was not disabled because she was able to perform other work. He based his determination largely on the testimony of the VE. Tr. 23. Ordinarily, the Commissioner can rely on the testimony of a VE to satisfy its burden of showing that the claimant can perform other work. *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008); *Porch v. Chater*, 115 F.3d 567, 571 (8th cir. 1997); *see also Guilliams v. Barnhart*, 393 F.3d 798, 804)(8th Cir. 2005)(stating that "[t]he commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers".) The operative phrase here is "properly formulated hypothetical question." The ALJ did not actually ask a question; instead he instructed the VE to list unskilled, light and sedentary jobs. T. 271. He did not advise the VE of any of the deficiencies he found in his RFC.[8]

---

[8]"After consideration of the entire record undersigned finds that the claimant has the residual functional capacity to perform sedentary work. Specifically, she is able to lift a maximum of 10 pounds and sit for a total of 6 hours and stand and/or walk for a total of 2 hours each in an 8-hour workday with normal breaks. From a mental standpoint, she is able to perform routine work with superficial contact incidental to work with public and co-workers. Such work has non-complex simple instructions which are learned by rote with few variables and requires little judgment and supervision is concrete, direct, and specific." T. 17.

When framing hypothetical questions to a vocational expert in disability benefits proceedings, the ALJ must comprehensively describe the mental and physical limitations on claimant's ability to function, so that vocational expert will be able to assess whether employment exists for person with such disabilities. *Wroblewski v. Califano*, 609 F.2d 908 (8th Cir. 1979). The ALJ must likewise consider, in combination, both physical and psychological impairments, since "only when all claimed impairments are considered by the vocational expert within the scope of a propounded hypothetical can he or she make a proper analysis as to claimant's ability to engage in significant gainful activity. *Id.* at 940.

Here, the ALJ did not even "captur(e) the consequences" of Plaintiff's disabilities. *Howe v. Astrue,* 499 F.3d 835 (8th Cir. 2007). In his examination of the VE, the ALJ skipped ahead to his conclusion that Plaintiff could perform light, sedentary work and simply instructed the VE to confirm this without describing a single limitation he had found. In *Simonson v. Schweiker*, 699 F.2d 426 (8th Cir. 1983) the Court expressed that the hypothetical questions posed to vocational experts should precisely set out the claimant's particular physical and mental impairments. *Simonson* at 430. In that case the Court found that the ALJ had erred in asking the expert to "assume I'd find that claimant has the exertional capacity for light or sedentary work." *Id.* "Hypothetical questions harboring this assumption have been found defective in a long line of cases." *Id.* Here, the ALJ did just that: he asked the VE to assume.

Oddly enough, the ALJ's decision recites the appropriate step five process and even professes to have followed it:

> If the claimant had the residual capacity to perform the full range
> of sedentary work, a finding of "not disabled" would be directed by
> Medical-Vocational Rules 201.25. However, the claimant's ability

>to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity. T.23.

The transcript of the hearing does not bear out the ALJ's conclusory statement. He did not list for the VE a single one of the limitations he proposed in his RFC. The response to a fatally defective question cannot constitute substantial evidence. *Simonson* at 430. Upon remand, the Commissioner should present proper vocational testimony on Plaintiff's ability to engage in any substantial gainful employment activity.

## V.   Conclusion

Accordingly, the court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration of Plaintiff's capabilities and employment opportunities pursuant to sentence four of 42 U.S. C. §405(g).


ENTERED this 30th day of June, 2011.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE